**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JULIAN ALCON GASPAR,

                            Petitioner,                  9:26-cv-00118 (BKS)

v.

FREDERICK J. AKSHAR II, in his official capacity as
Warden of the Broome County Correctional Facility;
PAMELA BONDI, in her official capacity as U.S. Attorney
General; PHILIP RHONEY, in his official capacity as
Deputy Field Office Director, Buffalo Field Office, U.S.
Immigration & Customs Enforcement; TAMMY
MARICH, in her official capacity as Field Office Director,
Buffalo Field Office, U.S. Immigration & Customs
Enforcement; TODD LYONS, in his official capacity as
Acting Director, U.S. Immigration and Customs
Enforcement, and KRISTI NOEM, in her official capacity
as Secretary of Homeland Security,

                            Respondents.

**Appearances:**

*For Petitioner:*
Matthew K. Borowski
Borowski Witmer Immigration Lawyers
4343 Union Road
Buffalo, New York 14225

*For Respondent Akshar II*
Cheryl Sullivan
Broome County Attorney
Joshua T. Terrell
Assistant County Attorney II
60 Hawley Street
Binghamton, New York 13901

*For Respondents Bondi, Rhoney, Marich, Lyons, and Noem*
Emer M. Stack
Assistant United States Attorney
United States Attorney's Office
100 South Clinton Street
Syracuse, New York 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On October 18, 2025, Petitioner Julian Alcon Gaspar, a noncitizen who has been present in the United States since 2019 and has been granted Special Immigrant Juvenile Status ("SIJS") and deferred action, was taken into custody by Immigration and Customs Enforcement ("ICE") and was detained at Broome County Jail in Binghamton, New York. (Dkt. No. 1, ¶ 1). On January 23, 2026, Petitioner filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus asserting that: (1) his detention under 8 U.S.C. § 1225(b)(2), without any process, is unlawful; (2) his detention was arbitrary and that he has been detained without a bond hearing or other process, in violation of his Fifth Amendment right to due process; and (3) his detention violates the Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A), (C). (*Id.* ¶¶ 55–65). Petitioner sought an order granting his immediate release, or, in the alternative, a bond hearing, and an award of attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412. (*Id.* at 19–21).

On January 23, 2026, the same day the Petition was filed, the Court issued an Order directing Respondents to show cause why the Petition for a writ of habeas corpus should not be granted. (Dkt. No. 2). In addition, the Court set a briefing schedule, scheduled oral argument for February 5, 2026, and prohibited Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending. (*Id.*).

2

On February 5, 2026, following oral argument, and having considered the parties'

briefing, (Dkt. Nos. 1, 5, 6, 8, 9), the Court granted the Petition, ordered Petitioner's immediate

release, (*see* Dkt. No. 10),[1] and advised the parties that a written decision would follow. This is

that decision.

## II.    BACKGROUND

Petitioner, a citizen of Guatemala, entered the United States without inspection on

January 24, 2019, near Lukeville, Arizona, at the age of 17. (Dkt. No. 1, ¶ 1; Dkt. No. 6-2, at 3).

Petitioner was arrested by United States Border Patrol for illegal entry and transported to the

Tucson Coordination Center for further processing. (Dkt. No. 6-2, at 3). On January 27, 2019,

Petitioner was given a Notice to Appear before an Immigration Judge in Buffalo, New York. (*Id.*

at 4). According to the Petition, Petitioner was then "released from custody and flew to New

York to live with a relative." (Dkt. No. 1, ¶ 1). On July 26, 2022, Petitioner's I-360 Petition for

SIJS was approved and he was granted "deferred action for a period of four years—until July 26,

2026." (*Id.*). Petitioner's Immigration Court case was put on the "status docket" based on an

unopposed motion to await a visa number on his SIJS petition, and on February 14, 2023, the

Immigration Court removed the case from the active docket. (*Id.*).

According to Respondents, "[o]n or about October 17, 2025, after receiving a call for

assistance from local law enforcement regarding Petitioner, U.S. Border Patrol took Petitioner

into custody and transferred him to ICE custody." (Dkt. No. 6-1, ¶ 8). When the Court asked the

Government at the hearing "why [Petitioner] was taken into custody," first by United States

Border Patrol and then ICE, the Assistant United States Attorney responded: "[u]pon information

and belief, there was a car accident on that date to which the local police responded and then ICE

---

[1] Petitioner was released the same day. (Dkt. Nos. 11, 12).

was contacted." The Government's attorney further stated, in response to the Court's questioning, that she "assume[d] ICE" made the decision to arrest Petitioner; that there was no warrant that she was "aware of"; and that there was no documentary evidence of his arrest.

The documents in the record reflect that Petitioner was transferred from the Border Patrol Station in Buffalo, New York to Broome County Jail. (Dkt. No. 5-1, at 4). A "Form I-203" "Order to Detain or Release Alien," signed by a Border Patrol agent, requested that Broome County Jail "Detain" Petitioner in connection with "Removal" proceedings. (Dkt. No. 5-1, at 1). This document does not contain any other information regarding Petitioner's detention, such as the statutory authority for his detention. (*Id.*).

On December 19, 2026, the Immigration Court issued an order granting Petitioner's motion to terminate removal proceedings "based on [Petitioner's] approved I-360 [SIJS] application . . . with deferred action for four (4) years," noting that Petitioner's "estimated priority date is about ten months from now." (Dkt. No. 6-2, at 6). The Immigration Court advised counsel for the Department of Homeland Security ("DHS") "that if they did not formally appeal, [Petitioner] should be released from custody." (*Id.*).

On or about January 12, 2026, DHS filed a notice of appeal with the Board of Immigration Appeals. (Dkt. No. 6-1, ¶ 11). Nothing in the record reflects the basis for that appeal.

At ICE's direction, Petitioner remained in Broome County Jail from October 18, 2025, through February 5, 2026, the date this Court ordered his release.

## III. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. §

2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018 WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## IV.    DISCUSSION

### A.    Special Immigrant Juvenile Status and Deferred Action

SIJS "classification provides immigration relief for foreign-born children living in the United States who have been abused, neglected, abandoned, or similarly mistreated by a parent and for whom a state or administrative court has determined it would not be in their best interest to be returned to their home country or prior country of residence." *A.C.R. v. Noem*, No. 25-cv-3962, 2025 WL 3228840, at *1–2, 2025 U.S. Dist. LEXIS 228076, at *4 (E.D.N.Y. Nov. 19, 2025) (internal quotation marks omitted) (citing 8 U.S.C. § 1101(a)(27)(J)). To qualify for SIJS:

> a noncitizen must be (1) under 21, (2) unmarried, and (3) present in the United States. 8 C.F.R. § 204.11(b). A state court must also declare the petitioner a ward of the court or commit the petitioner to the custody of "an agency or department of a State, or an individual or entity appointed by a State or juvenile court." *Id.* § 204.11(c); see also 8 U.S.C. § 1101(a)(27)(J). The state-court order must be predicated on two findings: (1) that the petitioner cannot return to his home country because of familial abuse, neglect, or abandonment; and (2) that it would not be in the petitioner's best interest to return to his or her home country or prior country of residence. 8 C.F.R. § 204.11(c). The petitioner must send this state-court order to [United States Citizenship and Immigration Services] as part of his or her petition for SIJS.
>
> . . .
>
> The Immigration and Nationality Act (as subsequently amended) renders SIJS recipients eligible for lawful permanent resident status. 8 U.S.C. § 1153(b)(4). But they can only apply for adjustment of status if an immigrant visa is "immediately available" at the time of filing. *Id.* § 1255(a).

*A.C.R.*, 2025 WL 3228840, at *1–2, 2025 U.S. Dist. LEXIS 228076, at *4–5. "However, there is an annual limit on visas available to SIJS beneficiaries," and, as relevant here, because of that backlog, the United States Citizenship and Immigration Services ("USCIS") "announced that all young people granted SIJS would also be considered for a discretionary grant of deferred action." (Dkt. No. 1, ¶ 21). Further, 8 U.S.C. § 1255(h)(1) provides that individuals with SIJS "shall be deemed, for purposes of subsection (a), to have been paroled into the United States."

The parties describe "[d]eferred action" as "an act of prosecutorial discretion that defers efforts to deport a noncitizen from the United States for a certain period of time." (Dkt. No. 1, ¶ 24; see Dkt. No. 6, at 14–15 (describing deferred action as "an act of prosecutorial discretion")). *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("Approval of deferred action status means that, for . . . humanitarian reasons . . . no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated." (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure § 72.03 [2][h] (1998))). The Government acknowledged at oral argument that it was not aware of any revocation or termination of Petitioner's deferred action status.

B.    **Statutory Basis for Detention**

Petitioner argues that as a SIJS recipient and having been granted "deferred action," until July 26, 2026, he is deemed paroled into the United States pursuant to 8 U.S.C. § 1255(h);[2] that his detention is governed by 8 U.S.C. § 1226(a); that he was entitled to due process prior to arrest and detention; and that he is entitled to immediate release, or, in the alternative, a bond hearing. (*See* Dkt. No. 1; Dkt. No. 9, at 34). Respondents argue that the plain language of 8

_____

[2] "In applying this section to a special immigrant [who has been granted special immigrant juvenile status as] described in section 1101(a)(27)(J) of this title--(1) such an immigrant shall be deemed, for purposes of subsection (a), to have been paroled into the United States." 8 U.S.C. § 1255(h)(1).

U.S.C. § 1225(b)(2)(A) authorizes and "requires [the Department of Homeland Security (DHS)] to detain aliens, like Petitioner," because he was "present in the United States," is an "applicant for admission" and is "seeking admission," has "not been admitted" and "cannot . . . establish that he is 'clearly and beyond a doubt entitled to be admitted.'" (Dkt. No. 6, at 17, 19; *see id.* at 20 (arguing that "[e]very 'applicant for admission' is seeking admission' and therefore covered by 8 U.S.C. § 1225(b)(2)(A)")).[3] Respondents further argue that Petitioner's SIJS and grant of deferred action does not confer lawful status or foreclose detention and removal, and that because his detention is authorized by § 1225(b)(2)(A), Petitioner is not entitled to a bond hearing. (Dkt. No. 6, at 24–26).

Although the parties discuss the Petitioner's SIJS, deferred action status, and parole,[4] at its core, the parties' dispute concerns whether the mandatory detention provision in 8 U.S.C. § 1225(b)(2) or the discretionary detention provision in § 1226(a) applies to Petitioner. Accordingly, the Court begins with these provisions.

---

[3] The Government summarizes its position as follows: section 1225 "requires DHS to detain aliens, like Petitioner, who are present in the United States without admission" and "regardless of how long has been unlawfully present or how far inland from the border an alien manage to travel before being detained." (Dkt. No. 6, at 17). It acknowledges, however, that this position represents a change in practice in 2025, and that "for many years . . . DHS and most immigration judges treated aliens who entered the United States without admission as being subject to discretionary detention under 8 U.S.C. § 1226(a)." (*Id.* at 12 citing *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)). Further, it appears, according to Petitioner, that prior to this change in practice, DHS applied § 1225(b)'s mandatory detention provisions to "noncitizens subject to expedited removal," and to "other recent arrivals seeking admission," (*see* Dkt. No. 1, ¶¶ 29–34 citing 8 U.S.C. §§ 1225(b)(1), (b)(2)).

[4] The Government agrees that Petitioner is deemed "paroled" but asserts that Petitioner is only paroled for purposes of § 1255(a), specifically, to apply for a visa when it becomes available. The Government further asserts that because Petitioner does not have parole status in a general sense under 8 U.S.C. § 1182(d)(5), which allows temporary parole for "urgent humanitarian reasons," Petitioner's parole has no impact on his underlying status as an applicant for admission who initially entered this United States unlawfully or, by extension, on ICE's authority to detain him and seek removal. By contrast, Petitioner argues that because he is deemed paroled into the United States as a result of his SIJS, he does not fall within the meaning of an "inadmissible" alien subject to detention or removal, as discussed in sections 1182(a)(6) (defining inadmissible aliens) and 1182(a)(7) (describing documents required to show admissibility and without which, immigrant is "inadmissible"). (Dkt. No. 9, at 4–5). The Court need not ascertain the scope or limitations of Petitioner's parole to resolve this case.

### 1.    8 U.S.C. § 1225

Section 1225(a)(1) deems "[a]n alien present in the United States who has not been admitted or who arrives in the United States" "an applicant for admission." Section 1225(b) places "applicants for admission" into two categories: "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" and to "certain other aliens designated by the Attorney General in his discretion." *Id.* (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)). The Supreme Court has described section 1225(b)(2) as "broader" than § 1225(b)(1)—"a catchall provisions that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here." *Id.* (citing 8 U.S.C. §§ 1225(b)(2)(A), (B)). As relevant here, § 1225(b)(2)(A) states: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for" a removal proceeding under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

### 2.    8 U.S.C. § 1226

Section 1226 is titled the "[a]pprehension and detention of aliens" and provides: "On warrant issued by the Attorney General, an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General—(1) *may continue to detain* the arrested alien; and (2) *may release* the alien on—(A) bond . . .; or (B) conditional parole." 8 U.S.C. § 1226(a)(1)–(2) (emphasis added). As emphasized, detention under § 1226(a) is discretionary. *See Tumba v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *3, 2025 U.S. Dist. LEXIS 219101, at *6 (S.D.N.Y. Nov. 4, 2025) (describing detention under § 1226 as "discretionary" and noting

that it "affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention" (citing 8 C.F.R. § 1236.1(d)(1))).

### 3.    Legal Background

Neither the Supreme Court nor the Second Circuit has addressed whether the mandatory detention provision in § 1225 or the discretionary detention provision in § 1226 apply in circumstances where, as here, a noncitizen has been present in the United States for some time. The two Circuits that have considered the issue have reached opposite conclusions. Two members of a Fifth Circuit panel, over a strong dissent, agreed with the Government's interpretation. *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, 2026 U.S. App. LEXIS 3899 (5th Cir. Feb. 6, 2026). The panel held that an "'applicant for admission' is necessarily someone who is 'seeking admission'" and that noncitizens, including those "who entered illegally many years ago," were subject to the mandatory detention provision in § 1225(b)(2)(A). *Id.*, 2026 WL 323330, at *4, 2026 U.S. App. LEXIS 3899, at *16. The Seventh Circuit, however, concluded that the Government was not likely to succeed on the merits of its argument that noncitizens, whom ICE arrested in Chicago without a warrant, were subject to mandatory detention under § 1225(b)(2)(A). *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025). The Seventh Circuit rejected the Government's argument that the terms "applicant for admission" and "seeking admission," as used in § 1225(b)(2)(A)'s mandatory detention provision were "synonymous," noting that this construction would "render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava*, 161 F.4th at 1061 (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). The Seventh Circuit further observed that "the difference in treatment between a noncitizen at the border and one

already in the United States fits within the broader context of our immigration law." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

While the district courts across the country are also divided, the vast majority have concluded that the mandatory detention provision in § 1225(b)(2)(A) does not apply to noncitizens already in the United States, and that such individuals are subject to the discretionary detention provision in § 1226(a). *See Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *4, 2025 U.S. Dist. LEXIS 232876, at *9 (S.D.N.Y. Nov. 26, 2025) (observing that the Government's "new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."); *see also id.*, 2025 WL 3295903, at *13–14, 2025 U.S. Dist. LEXIS 232876, at *32 (Appendix A listing majority cases and Appendix B listing minority cases).

Most of the district courts in the Second Circuit that have considered the issue have likewise concluded that "a noncitizen who has entered the country, even illegally, and is apprehended . . . after entry is not subject to the mandatory detention provision of Section 1225, and is instead subject to the discretionary detention provision of Section 1226." *Tumba*, 2025 WL 3079014, at *5, 2025 U.S. Dist. LEXIS 219101, at *12; *Gonzalez v. Joyce*, No. 25-cv-8250, 2025 WL 2961626, at *4, 2025 U.S. Dist. LEXIS 208578, at *10 (S.D.N.Y. Oct. 19, 2025) (concluding that "because Gonzalez has already lived in the United States for over two years since his release, § 1225 no longer applies to him"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025) ("[A] noncitizen cannot be subject to both mandatory detention under

§ 1225 and discretionary detention under § 1226."); *Ye v. Maldonado*, No. 25-cv-6417, 2025 WL
3521298, at *6, 2025 U.S. Dist. LEXIS 253358, at *15 (E.D.N.Y. Dec. 8, 2025) ("[T]he Court
rejects the government's arguments as unpersuasive and concludes that Section 1225 does not
apply to a noncitizen like the petitioner, who has been living in the United States while his
asylum application is pending, and that his detention can only be authorized if ICE complied
with 8 U.S.C. § 1226(a)."); *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065, 2025 WL
3314420, at *12, 2025 U.S. Dist. LEXIS 233224, at *36 (E.D.N.Y. Nov. 28, 2025) (finding the
petitioner's "detention does not fall under the mandatory detention provision of either Section
1225(b)(1) and (b)(2) based on the statutory text" and that the petitioner was therefore
"necessarily detained pursuant to Section 1226(a)," and that "her detention by ICE without any
notice or opportunity to be heard violates her rights to procedural due process under the Fifth
Amendment"); *Ivonin v. Rhoney*, No. 6:25-cv-06673, 2026 WL 199283, at *3, 2026 U.S. Dist.
LEXIS 14208, at *7 (W.D.N.Y. Jan. 26, 2026) (concluding, "like most [courts] to have
considered the issue. . . that the law does not allow for what Respondents claim, and that
noncitizens who are present in the United States without having been admitted or paroled are not
subject to mandatory detention under 8 U.S.C. § 1225(b)(2) but instead are subject to detention
under § 1226, and thus entitled to [due process].").

Respondents have cited several district court decisions endorsing their reading of § 1225:
*Qiwei Weng v. Genalo*, No. 25-cv-09595, 2026 WL 194248, 2026 U.S. Dist. LEXIS 13213
(S.D.N.Y. Jan. 25, 2026); *Yinxiao Chen v. Almodovar*, 25-cv-09670, 2026 WL 100761, at *6–13,
2026 U.S. Dist. LEXIS 7699, at *21–35 (S.D.N.Y. Jan. 14, 2026); *Candido v. Bondi*, No. 25-cv-
867, 2025 WL 3484932, at *1-4, 2025 U.S. Dist. LEXIS 250810, at *1–9 (W.D.N.Y. Dec. 4,
2025); *Xiaoquan Chen v. Almodovar*, No. 25-cv-8350, 2025 WL 3484855, *1, *4–8, 2025 U.S.

Dist. LEXIS 251605, at *1–2, 7–22 (S.D.N.Y. Dec. 4, 2025). (Dkt. No. 6, at 23). However, for

the reasons discussed below, the Court agrees with majority view and concludes that § 1226(a)

governs Petitioner's detention, not—as Respondents argue—§ 1225(b)(2)(A), and that Petitioner

therefore "may only be subject to detention as a matter of discretion." *Singh v. Maldonado*, No.

26-cv-00019, 2026 WL 233216, at *8, 2026 U.S. Dist. LEXIS 17311, at *25 (E.D.N.Y. Jan. 29,

2026); *see Ambroladze v. Maldonado*, No. 26-cv-0473, 2026 WL 295405, at *2, 2026 U.S. Dist.

LEXIS 23367, at *3–4  (E.D.N.Y. Feb. 4, 2026) ("Because Petitioner arrived in December 2022,

and was released on his own recognizance, he was not 'seeking admission' when he was arrested

in January 2026, and therefore is not subject to mandatory detention.").

### 4.    Statutory Analysis

"Every exercise in statutory construction must begin with the words of the text." *New

York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 216 (2d Cir. 2021) (quoting

*Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003)). "The words of the text to be

interpreted are not considered alone, however. Instead, we 'look[ ] to the statutory scheme as a

whole and plac[e] the particular provision within the context of that statute.'" *Id.* (quoting *Saks*,

316 F.3d at 345). "If the text of the statute 'is not entirely clear, we then turn to the broader

statutory context and its history.'" *Id.* (quoting *Khalid v. Sessions*, 904 F.3d 129, 132 (2d Cir.

2018)); *accord Cayuga Nation v. Tanner*, 6 F.4th 361, 378 (2d Cir. 2021) ("In interpreting a

statute, we look first to the language of the statute itself. When the language of the statute is

unambiguous, judicial inquiry is complete." (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d

280, 289–90 (2d Cir. 2002))).

Section 1225(b)(2)(A) requires mandatory detention "in the case of an alien who is an

applicant for admission, if the examining immigration officer determines that an alien seeking

admission is not clearly and beyond a doubt entitled to be admitted." The term "applicant for

admission" is defined in the statute as: "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Section 1225 further states that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Petitioner does not dispute that he is an "applicant for admission." (Dkt. No. 9, at 6). "A harder question is what the term 'seeking admission' means." *Alvarez Ortiz v. Freden*, No. 25-cv-960, 2025 WL 3085032, at *6, 2025 U.S. Dist. LEXIS 217654, at *14 (W.D.N.Y. Nov. 4, 2025). The Merriam-Webster Dictionary defines the word "seek" as "to ask for" or "to try to acquire or gain." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/seek (last visited Feb. 17, 2026); *see also* seek, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/seek (defining "seek" as "to try to find or get something") (last visited Feb. 17, 2026). And, as other courts have explained, "the active construction of the phrase 'seeking admission,' "necessarily implies some sort of present-tense action." *Lopez Benitez*, 795 F. Supp. 3d at 488 (internal quotation marks omitted) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 219 (D. Mass. 2025)). The Court agrees this is the most logical reading of § 1225(b)(2)(A). *See, e.g.*, *Lopez Benitez*, 795 F. Supp. 3d at 488 ("While respondents are correct that Mr. Lopez Benitez was never 'admitted' to the United States in that he never lawfully entered it (and is therefore treated as an 'applicant for admission' under various provisions of the statute), it does not follow that he continues to be actively 'seeking' such lawful entry at this time. He has already 'entered' the country (albeit unlawfully).").

    In addition, this reading comports with the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause,

sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S.

19, 31 (2001) (internal quotation marks and citation omitted). As many courts have observed, "if

all 'applicant[s] for admission' also are 'seeking admission,' then the words 'seeking admission'

would be surplusage." *Alvarez Ortiz*, 2025 WL 3085032, at *7, 2025 U.S. Dist. LEXIS 217654,

at *15 (citing cases). Indeed, this construction is "hardly novel in the context of the United

States' immigration law more broadly." *Tumba*, 2025 WL 3079014, at *5, 2025 U.S. Dist.

LEXIS 219101, at *12–13. As the Supreme Court has observed, "our immigration laws have

long made a distinction between those aliens who have come to our shores seeking admission,

such as petitioner, and those who are within the United States after an entry, irrespective of its

legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958).

Finally, the Court finds Respondents' assertion that noncitizens present within the United

States after entry are "seeking admission" within the meaning of § 1225(b)(2)(A), and thus

subject to mandatory detention would be inconsistent with the mandatory detention provisions

recently enacted in the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (codified

as amended at 8 U.S.C. § 1226(c)(1)(E)). The Laken Riley Act states, in relevant part, that the

"Attorney General *shall* take into custody any alien who . . . is inadmissible" under certain

provisions of 8 U.S.C. § 1182 and is "charged with," "arrested for," "convicted of," "or admits

committing acts" "which constitute" certain crimes. 8 U.S.C. § 1226(c)(1)(E). If, as Respondents

assert, all noncitizens who are present in the United States without admission and thus

"inadmissible," "are *already* subject to mandatory detention" "[w]hy . . . would Congress have

thought it necessary to specifically add a provision making those noncitizens subject to

mandatory detention if they are charged with certain crimes?" *Tumba*, 2025 WL 3079014, at *4,

2025 U.S. Dist. LEXIS 219101, at *10. Respondents' view of § 1225(b)(2)(A) "would also all

14

but read Section 1226 off the books—if 'anyone who has entered the country unlawfully, regardless of how long they have resided here, is subject to mandatory detention under § 1225(b)(2)(A), then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply.'" *Id.* 2025 WL 3079014, at *4, 2025 U.S. Dist. LEXIS 219101, at *11 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 490).

Accordingly, the Court finds that under the circumstances of this case, Petitioner may only be subject to detention under 8 U.S.C. § 1226(a).

### C.    Due Process Required

Having concluded that Petitioner's detention could only occur, under the circumstances of this case, under 8 U.S.C. § 1226(a), the Court must consider whether Petitioner's detention violates due process. The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)). Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention orders, which occur without

the procedural protections required in courts of law, call for the most searching review." *Id.* at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83 (2008)).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Id.* at 851 (quoting *Mathews*, 424 U.S. at 335).

As to the first factor, Petitioner's "interest in being free from imprisonment" is "the most significant liberty interest there is," *id.*, and it "cannot be abridged without 'adequate procedural protections," *Singh*, 2026 WL 233216, at *9 (quoting *Zadvydas*, 533 U.S. at 690). Petitioner has established his liberty interest. *See Singh*, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (finding the petitioner's "liberty interest" in being free from imprisonment was clearly established). In addition, here, at the time he was detained Petitioner had an unrevoked grant of deferred action until July 26, 2026. (Dkt. No. 1, ¶ 1; Dkt. No. 9, at 3). *See Nevarez Jurado v. Freden*, No. 25-cv-943, 2025 WL 3687264, at *4, *9 (W.D.N.Y. Dec. 19, 2025) (finding that "[t]he first *Mathews* factor" "weighs decisively" in favor of an alien who had an unrevoked grant of deferred action at the time of his arrest). Thus, the Court finds the first Mathews factor weighs strongly in Petitioner's favor.

The second factor also weighs in Petitioner's favor. Petitioner did not have an opportunity to post bond or argue for release on conditions. There is no evidence that there has been any change in circumstances between the grant of deferred action and his detention. There

is no evidence that anyone considered the fact that Petitioner had been granted deferred action or made any individualized assessment of whether he posed a danger to the community or flight risk. The risk of erroneous deprivation of Petitioner's liberty is therefore high. *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *see also Singh*, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (finding "the risk of erroneous deprivation of Petitioner's liberty interest" was "high" where it was undisputed that "that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in December 2025, and there was no change in circumstances from the time DHS released Petitioner on his own recognizance in March 2024 to his re-arrest and detention in December 2025").

With respect to the third factor, the Court recognizes that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez*, 803 F. Supp. 3d at 218 (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). Here, however, there is no evidence that Petitioner has any criminal history, is a flight risk, has failed to appear for any immigration proceeding, or poses any danger to the community. Petitioner's detention appears to have been completely arbitrary. To date, Respondents have failed to identify any reason for Petitioner's detention. The Court therefore concludes that Respondent's interest in Petitioner's detention is minimal. *See Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7, 2026 U.S. Dist. LEXIS 1766, at *20 (E.D.N.Y. Jan. 6, 2026) ("[T]he government's interest in continued detention is slight insofar as

17

petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances").

Accordingly, the Court finds that Respondents' "ongoing detention of Petitioner with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights." *Valdez*, 803 F. Supp. 3d at 219.

### D.    Appropriate Remedy

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). As Petitioner was summarily detained without any individualized assessment or deliberative process, he was detained in violation of his due process rights. The Court therefore concludes that no remedy other than immediate release would be sufficient in this case. *See Crespo Tacuri*, 2026 WL 35569, at *7, 2026 U.S. Dist. LEXIS 1766, at *21 (finding "[n]o relief short of petitioner's immediate release would be appropriate or sufficient" where the petitioner was "summarily detained without 'a deliberative process prior to, or contemporaneous with, the initial decision to strip [him] of the freedom that lies at the heart of the Due Process Clause'" (quoting *Rocano Buestan v. McShane*, No. 25-cv-8544, 2025 WL 3496361, at *6, 2025 U.S. Dist. LEXIS 252068, at *16 (S.D.N.Y. Dec. 5, 2025)); *Rocano Buestan*, 2025 WL 3496361, at *6, 2025 U.S. Dist. LEXIS 252068, at *16 (ordering immediate release, explaining that "given the nature of the constitutional violation [Rocano Buestan] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate") (quotation marks omitted); *Tumba*, 2025 WL 3079014, at *9, 2025 U.S. Dist. LEXIS 219101, at *25 (finding the petitioner entitled to release where she was subject to ongoing detention "with no process at all, much less prior notice, not showing of changed circumstances, or an opportunity to respond") (quotation marks omitted);

*Singh*, 2026 WL 233216, at *10, 2026 U.S. Dist. LEXIS 17311, at *29 (granting immediate release).[5]

V.    **CONCLUSION**

Accordingly, it is

**ORDERED** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that pending the issuance of any final removal order against Petitioner Julian Alcon Gaspar, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that Petitioner's request for reasonable attorney's fees and costs under the EAJA is **GRANTED** and any request for such fees and costs shall be filed by March 3, 2026, with any response filed by March 13, 2026; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

February 17, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[5] Because the Court has found Petitioner's detention violates his due process rights and has ordered his release, the Court need not reach his Administrative Procedure Act claim.